UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs                                                         Case No: 04-80335
                                                         Honorable Victoria A. Roberts

CURTIS ELLISON, D-3,

    Defendant.
_____/

**OPINION AND ORDER**

**I.    PLEA AGREEMENT**

Defendant Curtis Ellison ("Ellison") was charged with three counts in a seven count indictment: (1) conspiracy to distribute over 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846; (2) conspiracy to launder monetary instruments, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(I), 1956(a)(1)(B)(ii), 1956(a)(1)(A)(I) and 1956(h); and (3) forfeiture. Ellison pled guilty to Count VI, conspiracy to launder monetary instruments.

The presentence investigation report ("PSIR") provides for a Total Offense Level of 21 and Criminal History Category V. The Sentencing Guideline range listed is 70-87 months. The parties entered into a Rule 11 Agreement and stipulated to that same range. However, Ellison filed a sentencing memorandum objecting to the calculation of loss amount attributed to him. Given this challenge, the Government exercised its right under the Rule 11 agreement to withdraw from the Rule 11. Defendant did not withdraw his plea. The Court held an evidentiary hearing on the loss amount. Based on the evidence presented at the hearing, the Court determined that the PSIR and the

1

withdrawn Rule 11 accurately reflected the loss amount, resulting in a guideline range of 70-87 months. See Order dated January 31, 2007. In addition, the PSIR notes that an upward departure under § 4A1.3(a) may be warranted due to under-representation of Ellison's criminal history.

At the sentencing hearing scheduled for February 8, 2007, the Government contended that Ellison's guideline range is 110-137 months because he perjured himself at the loss amount hearing and, therefore, should not receive points for acceptance of responsibility and should receive points for obstruction of justice.

## II.     Guideline Calculation

The Government requested the Court to impose a two-level enhancement for obstruction of justice, under U.S.S.G. § 3C1.1, and to not credit Ellison for acceptance of responsibility under U.S.S.G. § 3E1.1. If the Court adopts the Government's view, Ellison's offense level would be 26, resulting in a Guideline range of 110 to 137 months.

The Government argues that Ellison perjured himself because he falsely denied laundering money in excess of $9,700.00 and falsely denied his involvement in drug transactions.

Ellison contends that he did not falsely deny any relevant conduct. He says that he truthfully testified about both matters and that the only conflicting testimony came from Jimmy Grey, a government witness. Because Jimmy Grey's testimony was inconsistent and uncorroborated, Ellison asserts that the Government failed to establish he falsely testified. Further, Ellison argues that for these same reasons the Court should not grant the Government's request to withdraw points for acceptance of responsibility.

2

1. *Enhancement for perjury at pre-sentence evidentiary hearing*

The United States Supreme Court addressed the imposition of § 3C1.1 enhancements for perjury in *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). The Court stated that in the context of 3C1.1[1], perjury occurs when "[a] witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* The Sixth Circuit "added its own gloss to *Dunnigan*." *United States v. Sassanelli*, 118 F.3d 495, 500-02 (6th Cir. 1997). In order to provide the appellate court with a meaningful record, the Sixth Circuit requires that a district court enhancing a defendant's sentence under § 3C1.1 must: 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury. *United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002).

The offense of perjury requires three elements: (1) a false statement under oath; (2) concerning a material matter, (3) with the willful intent to provide false testimony.

---

[1]U.S.S.G. 3C1.1 states:
If (A) the defendant willingly obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The commentary to 3C1.1 provides "a non-exhaustive list of examples of the types of conduct to which this adjustment applies." U.S.S.G. § 3C1.1, cmt. (n.4). The list includes "committing, suborning, or attempting to suborn perjury." *Id.* cmt. (n.4(b)).

3

*See Dunnigan*, 507 U.S. at 94. It is not enough for this Court to recognize conflicting testimony and determine which witness is credible. Nor is it sufficient under the law for the Court to broadly consider everything that Ellison said during the evidentiary hearing to be perjurious. At a minimum, the Government must indicate which portions of Ellison's testimony were perjurious, so that this Court can apply the elements of perjury to those portions of the testimony. *See United States v. Lawrence*, 308 F.3d 623, 633 (6th Cir. 2002).

The Government points to two instances it believes demonstrates that Ellison committed perjury. First, the Government argues that Ellison falsely denied paying in excess of $9,700 for leased cars. Although the Government does not specifically identify each statement, the Court notes that Ellison denied paying $50,000 on behalf of himself of others to the leasing company. Second, the Government argues that Ellison falsely testified to not being involved in drug transactions.

At the evidentiary hearing, Ellison testified that he never purchased drugs or made payments for drugs fronted to him. However, at his plea hearing, Ellison admitted he assisted others in laundering drug proceeds through the leasing of cars. The Court found that based on his plea and the testimony of Jimmy Grey, Ellison had purchased at least 20 pounds of marijuana valued at $22,000, and made a payment of $50,000 for leased cars. The Court now finds because Ellison denied these things and there was substantial evidence to the contrary -- including Defendant's own plea colloquy, -- that Defendant lied under oath.

The second element is materiality. The testimony regarding the above matters was material to Ellison's offense and the relevant conduct used to calculate his

4

guideline range. Ellison's testimony was false and would have, if believed by this Court, had a material impact on his sentencing guideline range.

The more difficult question is whether Ellison willfully intended to provide false testimony. The Court's evidentiary hearing findings were based in part on evidence from Government's witnesses whom the Court found more credible than Ellison. Does this translate into Ellison willfully providing false testimony or just a versionI the Court found incredible? After reviewing Ellison's testimony, other testimony and Defendant's plea colloquy, as well as having had the opportunity to view Defendant while he testified, the Court concludes that Ellison intended to provide false testimony.

Under oath, Ellison said that everyone else who testified was untruthful and that he did not engage in any of the alleged conduct. The evidence presented indicated otherwise. See this Court's January 31, 2007 Order. Yet, he continuously denied ever purchasing drugs or paying in excess of $9,700.00 for leased cars. Admissions by Defendant, contrary plea colloquy by Defendant and testimony from other witnesses evidence a wilful intention on the part of Defendant to lie under oath. For these reasons, the Court concludes that an enhancement for obstruction of justice under § 3C1.1 is warranted. To be clear, the Court is not punishing Ellison for exercising his constitutional right to testify.

2.  *Sentencing Reduction under § 3E1.1*

Sentencing Guideline §3E1.1 instructs district courts that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels," and decrease the offense level by 1 additional level if the defendant timely accepts responsibility thereby permitting the government to avoid preparing for

5

trial. U.S.S.G. § 3E1.1(a)-(b). The commentary states that "[conduct resulting in the enhancement under §3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, cmt. (n.4). "The Guidelines do envision extraordinary cases where a defendant could receive an adjustment for acceptance of responsibility despite also receiving an enhancement for obstruction of justice." *United States v. Proffit*, 304 F.3d 1001, 1009 (10th Cir. 2002). Ellison argues that he accepted responsibility for the crime. He contends that he is entitled to a three point reduction because he pled guilty at an earlier stage in the litigation and never challenged the basic tenet of his plea: that he laundered money by leasing cars. Further, Ellison claims that he did not deny or frivolously contest relevant conduct.

Because the Court finds that an enhancement under § 3C1.1 is warranted based on Ellison's denial of conduct relevant to the leased cars, which is the basis of the money laundering offense, an adjustment for acceptance of responsibility is not appropriate.

The Government's request to deduct three points for acceptance of responsibility and impose 2 points for obstruction of justice is **GRANTED**. With a total offense level of 26 and criminal history category V, Ellison's Guideline range is 110-137 months. The PSIR will be amended to reflect these changes.

**III.    § 3553(a) Factors**

Under the now advisory sentencing scheme the Court must be sure that the sentence imposed is "sufficient, but not greater than necessary," *See* 18 U.S.C. §

6

3553(a), and reasonable under the facts of the case.[2]  Pre-*Booker*,[3] the Sentencing Guidelines limited the factors a district court could consider in fashioning an appropriate sentence and mandated the extent to which a factor had to be present to warrant departure.  See *United States v. Crouse,* 145 F.3d 786, 789-790 (6th Cir. 1998).  *Booker*, however, rendered the Guidelines advisory, requiring only that courts consider the applicable guideline range and the statutory concerns set forth at 18 U.S.C. § 3553(a) and impose a sentence that takes into account the purposes set forth there.  *Booker,* 125 S.Ct. at 757.  A district court must still consider whether a downward -- or

---

[2]Under 18 U.S.C. § 3553, the court is to consider the following sentencing factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for - . . .

(5) any pertinent policy statement- . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

[3]*United States v. Booker,* 125 S.Ct. 738 (2005).

upward -- departure is warranted as part of its consideration of the appropriate Guideline range. *United States v. McBride*, 434 F.3d 470, 475-476 (6th Cir. 2006). But, it is now within the district court's discretion to decide what issues to consider and the weight they should be given under §3553(a), subject to review for reasonableness. *Id.* at 765; *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005); *Rita v. United States*,127 S.Ct. 2456 (2007).

Under § 3553(a) the Court is to consider such things as the seriousness of the offense, adequate deterrence of criminal conduct, and the need to protect the public from further crimes by the defendant.

"In deciding the likelihood that a defendant may commit other crimes, a court may take into account any evidence of obvious incorrigibility and conclude that leniency has not been effective." *United States v. Hacker*, 450 F.3d 808, 812 (8th Cir. 2006) (internal quotations omitted). The sentencing court may consider prior similar adult criminal conduct not resulting in conviction, prior similar civilly-adjudicated misconduct, pending trials or sentencing on other charges at the time of the instant offense and prior sentences. *Id.*; *see also* U.S.S.G. § 4A1.3(a)(2).

This PSIR reflects Ellison's extensive criminal history. Ellison has seven prior state convictions: possession with intent to deliver under 50 grams of cocaine; possession of under 25 grams of cocaine; receiving and concealing stolen property over $100.00; disorderly illegal occupation; aggravated assault; and operating while under the influence of alcohol. He has been imprisoned and placed on probation. The PSIR reports that Ellison consistently failed to comply with probation conditions.

In 1995, after an altercation with Talenya Abrams, mother of Ellison's son, Ellison

chased her to the front door of a residence while firing several gun shots until he struck her in the right lower leg. Ellison then fired several shots at Abrams' car where their one year old son was, and shattered the back glass window. Ellison was arrested and charged with two counts of Assault with Intent to Murder. Similarly, in 1998, Abrams informed Detroit Police that during an argument Ellison pointed a gun, grabbed her, and hurled her through the front window of a residence. Ellison was arrested and charged with one count of Assault with a Dangerous Weapon, felony firearm, and domestic violence. In both cases, the charges were dismissed without prejudice when the victim failed to appear. Ellison denies this criminal conduct. He asserts that no gun shots were ever fired at Abrams and she was not injured.

More recently, in 2004, Ellison was charged and convicted of aggravated assault. Ellison assaulted Erica Grier, mother of one of his children, when confronted with a request for money for the child's day care. Ellison repeatedly punched the victim in the face while going down a stairwell. The assault ended with Ellison choking her into unconsciousness. While the assault was occurring, the victim held their one and half year old child and the child's head repeatedly banged into walls as Ellison assaulted Grier.

The PSIR allocates criminal history points for this charge but not for all of those described above. The Court notes that in combination, they suggest a disturbing pattern of violent and abusive behavior. Moreover, Ellison has not attempted to change this behavior; twice he failed to successfully complete a court-ordered "Intervention in Battering" counseling program.

Ellison urges the Court to not heavily weigh his past abusive conduct or associations when considering § 3553 factors. He argues that the allegations of abusive conduct towards women are "gross exaggerations" and in some cases "completely false" – such as the alleged shooting of a former girlfriend and the mother of his child. The Court finds these statements incredible. *See* Probation Pictures of Erica Grier.

In requesting leniency, Ellison provides the Court with reports from Oakland Family Services and MADD Victims Impact Panel stating that he was making excellent progress with outpatient therapy in January, 2005 prior to his incarceration for this offense. Despite Defendant's urging, the Court is not persuaded that it should discount Defendant's pattern of violence in sentencing.

The Court notes some of Ellison's other illegal activities. In 1993, an investigation by the Michigan Humane Society revealed that Ellison engaged in dog fighting and animal cruelty. Ellison's mother told the Humane Society that Ellison kept pit bulls and used them to fight other dogs. She also said he did not properly feed the animals. Under the alias name "Curtis Eugene Smith," Ellison was charged with animal cruelty. These charges were dismissed without prejudice because the complaining witness failed to appear.

At age 17, Ellison was convicted of possession with intent to deliver under 50 grams of cocaine and possession of less than 25 grams of cocaine, for which he served two years in custody. At age 23, Ellison was convicted of receiving and concealing stolen property, and received only 3 years probation. At age 24, he was convicted of having a disorderly-illegal occupation. At age 28, Ellison was convicted of attempted

10

fleeing of a police officer in the 4th degree. He received probation. Then, in 2004, when he is 32, Ellison was convicted of aggravated assault. Again, he received probation. Also at age 32, Ellison was convicted of operating a vehicle under the influence of alcohol. He was placed in custody for 45 and received two years probation.

Currently, Ellison awaits trial on one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) in the United States District Court, Eastern District of Michigan, under Docket Number 04-CR-80084-DT-01.[4] On December 31, 2003, officers of the Farmington (Michigan) Police Department effected a traffic stop of Ellison's car, in which he was a passenger. They found a Smith & Wesson, 9mm, semi-automatic handgun and a Taurus, .40 caliber, semi-automatic handgun on his person. Both firearms contained fully loaded magazines and a round in the chamber. All of this criminal conduct evinces Ellison's longstanding incorrigibility.

In fashioning an appropriate sentence, the Court would be remiss if it did not fully consider the seriousness and extensiveness of Ellison's criminal activity. Further, it is noted in the PSIR that for several of his convictions, not only was Ellison arrested and convicted under aliases but he also consistently failed to adjust to probation. Ellison's lengthy criminal history makes clear that he is a determined recidivist who poses an extra danger through his frequent use of false names. *See United States v. Zuniga-Peralta*, 442 F.3d 345, 347-48 (5th Cir. 2006) (holding that the district court correctly

---

[4]This case is before the Honorable Denise Page Hood. Ellison recently filed a Writ of Certiorari with the United States Supreme Court, which was entered onto the Court's docket on June 27, 2007 a case No.061710.

concluded that defendant's use of eleven aliases justified an upward departure based on the recidivism factor of 18 U.S.C. 3553(a)(2).  Further, it is clear that Ellison hasn't learned anything from his previous experiences with the criminal justice system.  Thus, the Court will take into account the seriousness of Ellison's past criminal conduct and his potential for recidivism under § 3553(a).

Ellison requests that the Court consider sentencing him at the lower end or below the originally calculated 70-87 month range.  He argues that he lacked guidance as a youth due to the death of his father when he was three-months old and the loss of his best friend, who committed suicide at age 14.  Ellison says he began to make poor choices after the death of his best friend.  Despite this, he reports a good childhood; free from abuse, neglect, or drug use.

Pre-*Booker*, "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing" were not considered relevant grounds for downward departure.  U.S.S.G. § 5H1.12.  And Courts were discouraged from considering family circumstances.  *Koon*, 518 U.S. 81, 95 (1996).  Post-*Booker*, the Court "has a freer hand to account for" factors that are discouraged under the Guidelines.  *United States v. Davis*, 458 F.3d 491, 498 (6th Cir. 2006).  Although his father was deceased, Ellison informs the Court that Curtis Ellison, Sr. was a man of strong moral values, honor, and integrity.  Before his death, he provided a stable home for his family, which his mother continued to maintain after his death.  The Court recognizes that the lack of a father or father figure can and often does have significant impact on a young man's life. However, Ellison overall had a good childhood.  The Court does not give weight to this consideration.

Finally, Ellison argues that a sentence at the low end of the guideline or even below the guideline range would adequately protect the public and deter his future conduct. He says that he is remorseful and recognizes the detrimental effect his incarceration will have on his six children. Further, he requests the Court to impose a non-punitive sentence so that he can become a veterinarian when he is released. Ellison says that given the opportunity, he will become a constructive member of society. The Court disagrees.

Taking into account all the § 3553(a)factors, the reasons advanced by Ellison for this Court to impose a sentence below the guideline range do not outweigh his extensive criminal history and the need to protect the public from future crimes. The Court believes that a sentence at the top of the guideline range is necessary given the history and characteristics of this Defendant. Therefore, the Court finds a sentence of 137 months imprisonment is sufficient, but not greater than necessary, to ensure adequate deterrence, protect the public from future crimes, and hopefully rehabilitate Mr. Ellison.

## IV. Order of Forfeiture

The Government requests an Order of Forfeiture in the amount of at least $72,000.00 based on the Court's Order of January 31, 2007. The Court will do so.

**IT IS ORDERED.**

/s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: July 27, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 27, 2007.

s/Carol A. Pinegar
Deputy Clerk