UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,       CASE NUMBER: 04-80335-03
                HONORABLE VICTORIA A. ROBERTS
v.

CURTIS ELLISON,

    Defendant.
                     /

## ORDER DENYING DEFENDANTS' MOTION TO VACATE, CORRECT OR SET ASIDE SENTENCE PURSUANT TO 28 U.S.C. § 2255

**I. INTRODUCTION**

This matter is before the Court on Defendant Curtis Ellison's pro se Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. #321). The Government responded on April 23, 2010 (Dkt. 338).

Defendant's motion is **DENIED**.

**II. BACKGROUND**

Defendant Curtis Ellison was indicted in July 2004 on three counts of conspiring to deliver marijuana and launder money instruments. On July 11, 2006, while represented by David S. Steingold, Defendant signed an agreement under Fed. R. Crim. P. 11 ("the Plea Agreement"), in which he pled guilty to one count of conspiring to launder money instruments. The parties stipulated that Defendant conspired to launder between $70,000 and $120,000 in drug proceeds, corresponding to a sentencing range of 70-87 months under the United States Sentencing Guidelines. By signing the Plea Agreement, Defendant agreed not to dispute the Guideline range.

On November 1, 2006, Defendant filed a memorandum objecting to the Plea Agreement's calculation of the amount of money he laundered during the conspiracy. The Government moved to withdraw the Plea Agreement, on grounds that Defendant violated the agreement not to challenge his sentencing range under the Guidelines. In response, Defendant moved to withdraw his guilty plea.

The Court heard arguments on the parties' motions on December 7, 2006. At the hearing, Defendant stated that Mr. Steingold filed the sentencing memorandum with his permission, because he wanted the Court to address the amount of money laundered. (Hr'g Tr. 4.) Defendant also stated that he had been under the impression that the Plea Agreement allowed him to dispute the amount involved, otherwise he would not have signed it. (*Id.* at 4-5.) However, Mr. Steingold concurred with the Government that, under the Plea Agreement, Defendant could argue for a Guideline departure, but could not challenge the Guidelines themselves. (*Id.* at 5.)

After discussion, the parties agreed that: (1) the Plea Agreement would be withdrawn; (2) Defendant would maintain his guilty plea to one count of conspiring to launder money; (3) the Government would dismiss the remaining charges after sentencing; and (4) Defendant would waive his right to appeal the sentence. (*Id.* at 7-8, 14.) This compromise allowed Defendant to request an evidentiary hearing for the Court to determine the laundered amount. However, the Court cautioned Defendant that, if the evidence showed that he laundered more money than previously stipulated, he would face a higher sentencing range. (*Id.* at 13.) After going over the details of the agreement with the Court, and hearing the evidence the Government planned to introduce, Defendant expressed on the record his understanding of the risks and

confidence in the result. (*Id.* at 11, 13.)

The evidentiary hearing took place on January 19, 2007. The Government presented several witnesses who testified that Defendant laundered proceeds from drug sales by leasing luxury automobiles and buying more drugs. *See United States v. King,* 169 F.3d 1035, 1039 (6th Cir. 1999) (upholding a money-laundering conviction where defendant used drug proceeds to purchase additional drugs); *United States v. Baez*, 87 F.3d 805, 810-11 (6th Cir. 1996) (same). Defendant opted to testify on his own behalf: he denied purchasing drugs to promote the underlying narcotics-distribution conspiracy, and stated that his car-leasing activities involved less than $10,000.

The Court found the evidence sufficient to establish that Defendant laundered between $70,000 and $120,000 in drug proceeds, the same amount as stipulated in the withdrawn Plea Agreement. Therefore, the Court held that Defendant's sentencing range remained 70-87 months.

At sentencing, the Government argued that, because Defendant reneged on the Plea Agreement, he was no longer entitled to Guideline deductions for acceptance of responsibility. Furthermore, the Government argued that Defendant's evidentiary-hearing testimony was perjurious, and that he should be assessed additional points for obstruction of justice. The Government suggested a new sentencing range of 110-137 months. The Court adjourned the hearing to allow Defendant to respond in writing. In the interval, Defendant fired Mr. Steingold and retained the counsel of Mark Magidson.

Defendant was sentenced on July 26, 2007. Before the hearing, the Court informed the parties that it agreed with the Government's new Guideline calculations. The Court found that a sentencing enhancement was appropriate because Defendant

lied under oath about buying drugs and how much money he spent leasing cars. Furthermore, since Defendant lied about his car payments, the amount of which formed a basis of his money-laundering plea, the Court declined to grant an adjustment for acceptance of responsibility. The Court imposed the highest penalty under the Guidelines, 137 months.

On November 24, 2007, Defendant filed this motion to vacate, set aside or correct his sentence, on grounds that Mr. Steingold provided ineffective representation. Defendant blames Mr. Steingold's performance for earning him a sentence 50 months longer than the maximum he could have received under the Plea Agreement.

## III. APPLICABLE LAW

In order to sustain an ineffective assistance of counsel claim, a defendant must satisfy the two-pronged test of *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984). *Accord Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010).

The quality of legal representation is assessed under an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. To establish that counsel was ineffective, the defendant must identify acts or omissions that fall "outside the wide range of professionally competent assistance." *Id.* at 690. The reviewing court must be "highly deferential" in scrutinizing counsel's performance, indulging a "strong presumption" that

4

counsel provided reasonable professional assistance, and resisting the temptation to second-guess decisions in hindsight. *Id.* at 689. *Accord Holder v. Palmer*, 588 F.3d 328, 338 (6th Cir. 2009).

To prove prejudice, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Ultimately, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686; *Slaughter v. Parker*, 450 F.3d 224, 234 (6th Cir. 2006).

## IV. DISCUSSION

Defendant claims Mr. Steingold's representation was constitutionally defective because he: (1) filed the sentencing memorandum which caused the Government to withdraw the Plea Agreement; (2) made Defendant testify against his interest at the evidentiary hearing; and (3) failed to properly argue against the two-point sentencing enhancement for obstruction of justice. The Court addresses each claim separately.

### A. Breach of Plea Agreement

The Plea Agreement signed by the parties in July 2006 contained a provision stipulating: "Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets." (Dkt. #216, Plea Agreement, at § 2(B).) This clause is ubiquitous in plea agreements filed in this Court.

Defendant's sentencing memorandum objected to the method used in the Plea Agreement to determine how much money he laundered during the conspiracy. Under the Guidelines, however, the amount of laundered funds determines a defendant's sentencing range. The Government responded by withdrawing the Plea Agreement.

Defendant claims that by filing the sentencing memorandum, Mr. Steingold initiated a chain of events which resulted in raising his punishment from 70-87 months to 137 months. The Government responds that breaching the Plea Agreement was a tactical decision, because it allowed Defendant to have the Court determine the amount of laundered funds, with potentially advantageous results.

Defendant argues that a professionally competent attorney would have known the prejudicial consequences of challenging a plea agreement. However, proceeding without an agreement did not worsen Defendant's posture. Under the compromise reached by the parties, he was able to plead guilty to the same count of money laundering, and the Government committed to dropping all remaining charges after sentencing. The only difference was that, by proceeding without a deal, Defendant could ask the Court to determine the amount of laundered funds, based on an evidentiary hearing. This gave Defendant an opportunity to prove that his involvement in the conspiracy was less than alleged by the Government.

Although breaching the Plea Agreement may have been a risk, Defendant was not prejudiced by the resulting compromise, because it let him maintain the same guilty plea, while giving him the chance to argue for a lighter sentence. Admittedly, if the evidence was unfavorable, a higher penalty could also result, but Defendant was fully aware of this risk when he made his decision.

Defendant also argues that Mr. Steingold had no reason to file the sentencing memorandum, because Defendant was satisfied with his sentence under the Plea Agreement. Defendant's prior statements on and off the record belie this claim. At the December 7, 2006 hearing, Defendant said that he wanted Mr. Steingold to raise in court the issue of how much money he laundered, and that he would not have signed the Plea Agreement if he had known that it would prevent him from disputing this issue. Defendant also wrote directly to the Court to express his concern that "the computation of points the Goverment [sic] attributes to me significantly makes the Guidelines higher than necessary." (Def.'s Letter (undated, received Oct. 26, 2006).)

The Court cannot definitely state whether Mr. Steingold was oblivious to the restrictions of the Plea Agreement when he filed the memorandum, or whether he intentionally defied them to compel the Government to withdraw the deal. Regardless, the dissolution of the Plea Agreement did not prejudice Defendant. To the contrary, it released him from stipulating to the amount of laundered funds, and gave him the chance he asked for, in his letter and on the record, to argue for a lower sentence. Defendant cannot blame counsel in retrospect because his gamble did not pay off.

**B.    Evidentiary Hearing Testimony**

Defendant alleges that Mr. Steingold coerced him to testify at the evidentiary hearing, saying that it was in his best interest to do so. Defendant argues he received a higher sentence because he gave truthful testimony, and claims Mr. Steingold failed to advise him of his Fifth Amendment right against self-incrimination.

If Defendant was correct, and the Court indeed raised his sentence based on truthful testimony, failure to advise him of his right against self-incrimination could

7

amount to ineffective assistance.  To the contrary, however, the Court's decision was predicated upon finding that Defendant committed perjury.  First, the Court found that, despite substantial evidence to the contrary, Defendant lied about buying drugs and the sums he spent on luxury-car leases; this is the reason the Court applied the sentencing enhancement for obstruction of justice.  Then, because Defendant's perjury concerned the basis of his money-laundering offense, the Court denied a reduction for acceptance of responsibility.

Defendant does not allege that Mr. Steingold encouraged him to commit perjury, or told him there would be no consequences if he did.  Moreover, Defendant supplies no evidence that Mr. Steingold encouraged him to testify, much less that he was coerced or bullied into doing so.  However, even if these allegations were true, Defendant's claim would fail because the prejudice of which he complains resulted neither from the exercise of his constitutional right, nor from any incriminating admission he made.  Instead, the Court's ruling was compelled by finding that Defendant perjured himself in open court.

### C. Failure to Argue Sentencing Enhancement

Defendant argues that Mr. Steingold was ineffective in opposing the sentencing enhancement for obstruction of justice.  Defendant argues Mr. Steingold did not properly argue that the enhancement was a misapplication of the Guidelines, and that he failed to demand that the Court: (1) identify those portions of his testimony which were deemed perjurious; and (2) make a clear and specific finding that obstruction of justice occurred.  *United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002) (*citing United States v. Mise*, 240 F.3d 527, 531 (6th Cir. 2001)) (other citation omitted).

Defendant provides no evidence that Mr. Steingold's argument fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if it was, however, Defendant suffered no prejudice, because the Court's determination was upheld on review. In Defendant's appeal to the Sixth Circuit, he complained, among other things, that the obstruction-of-justice enhancement was improperly levied. The Sixth Circuit upheld this Court's application of the Guidelines, and found that the requisite findings were made on the record. *See United States v. Ellison*, 336 Fed. Appx. 483, 487, 2009 U.S. App. LEXIS 15129, 2009 WL 1916881 (6th Cir. 2009) (unpublished) ("The district court . . . specified two instances of perjury [and] made a specific finding that each element of perjury was present").

Furthermore, absent highly exceptional circumstances, a motion under 28 U.S.C. § 2255 cannot serve to relitigate issues previously raised on appeal. *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (citation omitted). Defendant makes no showing of exceptional circumstances. Therefore, his claim is without merit.

**V.    CONCLUSION**

Defendant fails to establish that counsel's assistance was constitutionally defective. Therefore, his Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 **DENIED**.

S/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated: May 20, 2010

9

The undersigned certifies that a copy of this document was served on the attorneys of record and Curtis Ellison by electronic means or U.S. Mail on May 20, 2010.

s/Carol A. Pinegar
Deputy Clerk